**1UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES,**<br><br>**v.**<br><br>**OSVALDO VASQUEZ**<br>**Defendant.** | **CRIMINAL ACTION NO. 20-40018-TSH** |

**MEMORANDUM OF DECISION AND ORDER**
**September 28, 2023**

**HILLMAN, S.D.J.**

Osvaldo Vasquez has filed a *pro se* motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 in the above proceeding. Vasquez alleges that several appointed attorneys failed to seek to suppress the results of search warrants issued for his vehicle and his home. This, Vasquez claims, amounts to ineffective assistance of counsel in violation of the Sixth Amendment. The Government moves to dismiss the petition.[1]. For the reasons that follow, Vasquez's motion is **denied** and the Government's motion to dismiss is **granted**.

## Procedural History

On September 16, 2015, a federal grand jury in the District of Massachusetts returned a multi-count indictment charging Vasquez and several co-defendants with various drug trafficking offenses. Count One of the indictment alleged that from approximately August 2014 until August 2015, Vasquez conspired to possess with the intent to distribute, and to distribute, one kilogram or more of heroin and 500 grams or more of cocaine, in violation of 21 U.S.C. §§

[1] Vasquez did not oppose the Government's motion to dismiss.

846 and 841. Counts Two, Three, and Six charged Vasquez with specific instances of distribution and/or possession with the intent to distribute heroin, in violation of 21 U.S.C. § 841, and Count Seven charged Vasquez with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

After this Court denied a motion filed by Vasquez to suppress evidence obtained from court authorized wiretaps, and motions later filed by Vasquez seeking an enlargement of the time to file new or additional suppression motions long after the deadline to do so had expired, Vasquez pled guilty, reserving the right to challenge this Court's suppression-related rulings and to claim ineffective assistance of counsel. On November 3, 2017, pursuant to his guilty plea, Vasquez was sentenced to a term of 125 months imprisonment, and four years of supervised release.

The First Circuit subsequently upheld this Court's denial of the motion to suppress evidence derived from the wiretaps. *United States v. Santana-Dones*, 920 F.3d 70, 80 (1st Cir. 2019), *cert. denied*, 140 S. Ct. 257 (2019) ("We hold that the district court did not err in concluding that the wiretap application, read in tandem with its supporting affidavit, was more than minimally adequate to justify the authorization of a wiretap.")[2] The appellate court further rejected Vasquez's claims that this Court abused its discretion in denying him the opportunity to file motions to suppress five months after the deadline to do so had passed, holding:

> We detect nothing resembling an abuse of discretion in the district court's conclusion that Vasquez failed to demonstrate good cause for reopening the motion-filing deadline over five months after it had expired. Good cause for allowing a defendant to file motions out

[2] Vasquez further asserts in his motion that this Court erred in failing to suppress wiretap communications "because the government failed to establish legal necessity." Vasquez cannot pursue that claim. "[I]ssues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994) (internal modifications and quotation marks omitted); *see also Elwell v. United States*, 95 F.3d 1146, 1996 WL 516138 at *5 (1st Cir. 1996) (holding that a petitioner "is not entitled on collateral review to relitigate issues raised on direct appeal, absent an intervening change in the law").

> of time demands more than the appearance of new counsel seeking to second-guess the decisions of prior counsel. … We conclude, without serious question, that the district court acted well within the wide encincture of its discretion in denying Vasquez's motion to extend.

*Id*. at 81-82.

The First Circuit elected not to address Vasquez's claims that he had been provided ineffective assistance by those attorneys who declined to seek suppression of the evidence derived from the GPS warrants and/or the evidence derived from the search of his home. Instead, they found that those claims fell within the general rule that ineffective assistance claims will not be addressed for the first time on appeal. *See United States v. Mala,* 7 F.3d 1058, 1063 (1st Cir. 1993) ("fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions, but, rather, must originally be presented to, and acted upon by, the trial court."). In so doing, the First Circuit noted:

> The searches at issue here were conducted pursuant to duly issued warrants, so that a court, in each instance, had made a preliminary determination of probable cause. … The rule of Occam's Razor teaches that the simplest of competing theories should often be preferred and, here, the obvious reason – that counsel did not believe that the motions would succeed – is entirely plausible. … In a nutshell, the record simply does not justify a finding that counsel's failure to file additional motions to suppress was objectively unreasonable under prevailing professional norms.

*Id*. at 82-83.

Any related claim of ineffective assistance of counsel for failing to raise these claims on a direct appeal, or as an interlocutory appeal, also lacks merit. *See Tse v. United States*, 290 F.3d 462, 465 (1st Cir.2002) ("Since [the petitioner's] claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail.")

**Background**

In the late summer of 2014, the Drug Enforcement Administration ("DEA") commenced an investigation into the narcotics trafficking activities of Vasquez and other members of a Drug Trafficking Organization ("DTO") led by him, including several co-defendants. From August 2014 through July 2015, cooperating witnesses working with the DEA and local law enforcement conducted controlled purchases of nearly 500 grams of heroin from DTO members and discussed with them the purchase of cocaine.

Beginning in September 2014, investigative efforts were aided by the installation of a GPS tracker on a vehicle operated by Vasquez. In addition, from April 2015 through July 2015, investigators applied for authorization to intercept communications on a cellular phone used by Vasquez. These interceptions captured Vasquez and many others discussing the purchase, sale, and distribution of narcotics and revealed, among other things, their awareness of the potentially deadly consequences of the narcotics being distributed.

The Government sought and obtained seven GPS tracking warrants for a grey 2001 Jeep Cherokee operated by Vasquez; on September 25, 2014, October 8, 2014, November 24, 2014, January 8, 2015, March 12, 2015, April 24, 2015, and June 7, 2015. Each affidavit that accompanied the request detailed specific information regarding Vasquez's involvement in meeting with a cooperating witness to discuss purchases, carry out controlled purchases and specific amounts of controlled substances that were involved. Each affidavit explained that there was probable cause that would lead to additional evidence of Vasquez's narcotics trafficking activities, the identification of physical locations where the drugs were offloaded, stored and purchased, the identity of criminal associates and evidence that Vasquez resided at 7 Jewett Terrace. The magistrate (Hennessy, M.J.) issued each of the seven GPS tracking warrants. The

Government also sought a search warrant for 7 Jewett Terrance, which included facts to support probably cause that Vasquez was involved in drug trafficking, including more than 25 interceptions of communications over a phone belonging to Vasquez. The 7 Jewett Terrance search warrant also established probable cause that it was Vasquez's residence. That warrant was issued on April 23, 2015, and executed the morning of August 7, 2015. As a result of the search of 7 Jewett Terrace, agents found approximately 800 grams of heroin, 800 grams of cocaine, a loaded semi-automatic pistol, the cellphone that was the subject of the wiretap and over $7,000 in cash.

**Standard of Review**

To succeed on an ineffective assistance of counsel claim, a petitioner "must establish both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Turner v. United States*, 699 F.3d 578, 584 (1st Cir.2012) (*citing Strickland v. Washington*, 466 U.S. 668, 688 (1984)). The two prongs of the ineffective assistance test are commonly referred to as the "cause" and "actual prejudice" tests. *Bucci v. United States*, 662 F.3d 18, 29 (1st Cir.2011). A district court reviewing such claims need not address both prongs of the test because a failure to meet either prong will undermine the claim. *Strickland*, 466 U.S. at 697; *see also Reyes-Vejerano v. United States*, 117 F. Supp. 2d 103, 106 (D.P.R. 2000) ("The petitioner has the burden of proving both prongs of this test, and the burden is a heavy one.").

As for the "cause" test, the court must be " 'fairly tolerant' " of counsel's performance because the Constitution does not guarantee a perfect defense. *Moreno–Espada v. United States*, 666 F.3d 60, 65 (1st Cir. 2012) (*quoting Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir.1994)). The

issue is whether counsel's performance was " 'within the wide range of reasonable professional assistance' that a competent criminal defense counsel could provide under 'prevailing professional norms.' " *Bucci*, 662 F.3d at 30 (*quoting Strickland*, 466 U.S. at 688–89). "Judicial scrutiny of the defense counsel's performance is 'highly deferential,' and the defendant must overcome a 'strong presumption ... that, under the circumstances, the challenged action "might be considered sound trial strategy." ' " *Id*. (*quoting Strickland*, 466 U.S. at 689).

The "actual prejudice" test requires a showing "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The court must consider "the totality of the evidence before the judge or jury" when measuring the prejudicial effect. *Stephens v. Hall*, 294 F.3d 210, 218 (1st Cir.2002). Factors that are commonly considered include the strength of the prosecution's case, the effectiveness of the defense presented at trial, and the potential for new evidence and new avenues for cross-examination to undermine the credibility of Government witnesses. *Turner*, 699 F.3d at 584. When conducting this appraisal, we must make "every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

The first affidavit in support of the requested tracking warrant detailed Vasquez's use of the Jeep to sell heroin to the CW on two separate occasions. Exhibit 1 p. 9-11, at ¶16–20 (Docket No. 338-1). Vasquez drove the Jeep to both transactions, and, in one instance, the sale took place inside the Jeep. The magistrate judge reasonably concluded that the tracking of the Jeep might lead to evidence of Vasquez's narcotics trafficking activities. Having used the Jeep to sell drugs, it was fair to infer that Vasquez would use the Jeep to acquire drugs to sell, or to drive to where proceeds would be kept or laundered. It was similarly reasonable to infer that Vasquez

may use the Jeep to go to meetings with criminal associates. Vasquez does not plausibly explain in any of his filings on what basis, a suppression motion could have been credibly filed as to the GPS tracking. Agents obtained search warrants to track the Jeep supported by probably cause from a neutral and detached magistrate.

Vasquez further alleges that his former counsel were ineffective for failing to challenge the "nexus" element of the Government's search warrant of his home. Vasquez concedes the first element of probable cause, that a crime has been committed, the "commission element." *United States v. Roman*, 942 F.3d 43, 50 (1st Cir. 2019) but alleges that the Government failed to establish a "nexus" between drug sales and his residence sufficient to search his home at 7 Jewett Terrace.

Here, the affidavits in support of the residence search warrant contain such evidence. Exhibit 8 (Docket 338-8). DEA Special Agent Boyle detailed in his affidavit supporting the search warrant three specific occasions where Vasquez was seen driving away from the area of Jewett Terrace mere minutes before he distributed drugs. First, Vasquez was observed by government agents 7 minutes prior to him being audio and video recorded distributing 30 grams of heroin to a cooperating witness at the Greendale Mall. The Greendale Mall is approximately 7 minutes away from 7 Jewett Terrace. Second, on another occasion agents observed Vasquez driving his vehicle away from the area of 7 Jewett Terrace and then observed Vasquez and the CW arriving at the Greendale Mall exactly 7 minutes later. Third, Agent Boyle described another drug transaction that took place with "SM," whose identity has been redacted from search warrant affidavits, at a convenience store located close to SM's residence on Providence Street in Worcester. Vasquez was followed from Jewett Street to the area of the residence and convenience store. About 10 minutes later, a call was intercepted by agents where SM told

Vasquez he was at the convenience store and that he saw Vasquez. A few minutes later agents observed Vasquez walking from the area of the convenience store toward his vehicle parked on Pattinson Steet, roughly one block away from the convenience store. It is approximately 9 minutes from 7 Jewett Street to this convenience store.

Vasquez contends that because the affidavit supporting the search warrants do not detail him "exiting the home before getting into the [vehicle]," there is insufficient evidence establishing a nexus between his residence and evidence of drug trafficking. Vasquez further asserts that being seen "in the area" of the street on which he lives, rather than at his home, is insufficient to establish a nexus between the drugs, his car, and the eventual sale of those drugs to the CW. But a magistrate judge need not rely on anything more than a "fair probability" that drugs would be found at the residence. *United States v. Gonzalez-Arias*, 946 F.3d 17, 25 (1st Cir. 2019). That fair probability is met here. Moreover, this is sufficient evidence for the magistrate judge to find that the defendant "move[d] back and forth from his residence in relation to drug transactions." *Ribeiro*, 397 F.3d at 51. The Magistrate, relying on common sense and reasonable inferences, could readily have inferred that Vasquez had left 7 Jewett Terrance, got into his Jeep and drove to the drug sale. Furthermore, Vasquez has not identified any other location from which he could have been leaving.

Further information to establish a nexus can be evidence that the "defendant used his home as a communications hub for drug activity," *Rivera*, 825 F.3d at 64-65. Here, such evidence can be found by a phone call that took place in relation to the above-mentioned second Greenwood Mall sale as well as a separate phone call between Vasquez and Co-Defendant Santana-Dones. Minutes before agents observed Vasquez departing from the area of Jewett Terrace to make the second Greenwood Mall transaction, the CW received a phone call from

Vasquez in which he enquired as to where the CW was. Upon telling Vasquez that they were at the mall, he said to wait for him there. He was subsequently observed by agents minutes later leaving the area of Jewett Terrace. The timing of this phone call in conjunction with agents' observations of Vasquez supports the inference that Vasquez left from 7 Jewett Terrace to conduct a drug transaction.

The second relevant phone call consisted of a conversation between Vasquez and Co-Defendant Santana-Dones in which Vasquez held a whirring coffee grinder up to the phone and said, "tomorrow we will do the deal." Agent Boyle explained that he believed based on his training and experience and knowledge of the investigation Vasquez to be discussing the cutting of heroin in advance of a drug transaction the next day. During this phone call, Vasquez's phone was pinging off a cell tower near 7 Jewett Terrace. While this does not establish an exact location, taking the ping location together with the fact that in the two months preceding the call, Vasquez and Santana-Dones were both audio and video recorded distributing hundreds of grams of heroin to CWs and that it would be unusual to use a coffee grinder outside of your home is enough to lead the Magistrate Judge to reasonably infer that there was a nexus between 7 Jewett Terrace and evidence of drug activity.

Taking these observations in their totality, combined with evidence of Vasquez's status as a "long-time, successful, drug-trafficker," show that there was a nexus between evidence of drug activity and Vasquez's residence under both the "mov[ing] back and forth" and "communications hub" standards. *United States v. Feliz*, 182 F.3d 82, 86 (1st Cir. 1999); *Ribeiro*, 397 F.3d at 51; *Rivera*, 825 F.3d at 64-65. Thus, both probable cause and a nexus between evidence of drug activity and Vasquez's home are found such that the information in the affidavit provided an adequate basis for the Magistrate Judge to issue a warrant.

Accordingly, the Court finds that the performances by Vasquez's former counsel do not fall below an objective standard of reasonableness, see *Strickland*, 466 U.S. at 688, or that Vasquez was prejudiced by counsel's actions or inactions, see *id*. at 687.

Finally, even if Vasquez could establish that the warrants were somehow deficient, the good faith exception would foreclose suppression of the warrants. *United States v. Leon*, 468 U.S. 897 (1984). *Leon* provides that suppression of evidence obtained pursuant to a warrant is only appropriate if "the magistrate abandoned his detached and neutral role," "officers were dishonest or reckless in preparing their affidavit," or officers "could not have harbored an objectively reasonable belief in the existence of probable cause." *Id*. at 926, 104 S.Ct. 3405. It thus was objectively reasonable under these circumstances to believe in the existence of probable cause. And because it was objectively reasonable to harbor this belief, the good faith exception applies.

## **Conclusion**

For the foregoing reasons, the Government's motion to dismiss (Docket No. 338) is **granted** and Vasquez's petition to vacate his sentence (Docket No. 326) is **denied**.

## **RULING ON CERTIFICATE OF APPEALABILITY**

The statute governing appeals of final orders in habeas corpus proceedings provides that an appeal is not permitted "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a "substantial showing," a petitioner must demonstrate that "reasonable jurists could debate whether ... the petition should have been resolved in a different manner or that the issues

presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595 (2000) (internal quotation marks omitted). This is a low bar; a claim can be considered "debatable" even if every reasonable jurist would agree that the petitioner will not prevail. *Miller-El v. Cockrell*, 537 U.S. 322, 338, 123 S.Ct. 1029 (2003). In ruling on an application for a certificate of appealability, a district court must indicate which specific issues satisfy the "substantial showing" standard. 28 U.S.C. § 2253(c)(3).

I deny a certificate of appealability with respect to all claims raised in Vasquez's Petition. I do so because Vasquez cannot make a substantial showing of the denial of a constitutional right as reasonable jurists cannot debate that this Court lacks jurisdiction over his claims, nor is the issue presented adequate to deserve encouragement to proceed further.

/s/ Timothy S. Hillman
TIMOTHY S. HILLMAN
UNITED STATES SENIOR DISTRICT JUDGE

SO ORDERED.